CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED
2019 MAY 30 PM 1:36
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

GARY ALLEN DARNELL,
Institutional ID No. 01719408,

Plaintiff,

v.

CHRIS JOLLY, *Police Chief of Memphis, TX*, et al.,

Defendants.

CIVIL ACTION NO. 2:18-CV-142-D-BQ

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Under Special Order No. 3-251, this case was automatically referred to the undersigned United States Magistrate Judge for further proceedings. The undersigned issues the following findings of fact, conclusions of law, and recommendation with respect to pro se Plaintiff Gary Allen Darnell's claim against the City of Memphis, Texas (City).

## I. Background

Darnell filed his original Complaint under 42 U.S.C. § 1983 on July 27, 2018, alleging claims for excessive use of force and municipal liability in connection with a March 20, 2017, arrest. Compl., at 3–12.[1] (ECF No. 3). The undersigned reviewed Darnell's Complaint, as well as authenticated records provided by the Memphis Police Department, and ordered Darnell to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976). ECF No. 23. On January 8, 2019, Darnell filed his responses under oath and, although not timely filed, the undersigned considered Darnell's answers in the screening process. ECF No. 30.

[1] Page citations to Darnell's pleadings refer to the electronic page number assigned by the court's electronic filing system.

On January 16, 2019, the undersigned entered findings and conclusions, recommending that the District Judge dismiss Darnell's claims against the City and Kilo, a Memphis Police Department police dog.[2] ECF No. 33. Darnell filed objections on February 5, 2019, to the undersigned's findings and conclusions. ECF No. 36. On February 25, 2019, the District Judge adopted the undersigned's recommendation that Darnell's claims against Kilo be dismissed with prejudice. ECF No. 39. With respect to Darnell's municipal liability claim against the City, however, the District Judge concluded it should not be dismissed with prejudice but "[i]nstead, plaintiff should be given an opportunity to file an amended complaint that is sufficient to withstand dismissal, if he can." *Id.* Through that same order, the District Judge re-referred Darnell's municipal liability claim against the City to the undersigned for further proceedings. *Id.*

Accordingly, the undersigned entered an order on February 28, 2019, permitting Darnell to file an amended complaint solely with respect to his claim against the City. ECF No. 40. On March 25, 2019, Darnell filed an Amended Complaint, which is the controlling pleading for the court's screening of Darnell's municipal liability claim. *See* ECF No. 46; *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (explaining that an amended complaint supersedes the original, rendering it of no legal effect unless the amended complaint specifically refers to, and incorporates by reference, the earlier pleading). After reviewing Darnell's Amended Complaint, and pursuant to Special Order No. 3-251, the undersigned makes the following findings and conclusions and recommends that Darnell's claims against the City be dismissed in accordance with 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

---

[2] By separate order, the undersigned required Defendant Chris Jolly to answer or otherwise plead with respect to Darnell's claim against him for excessive use of force. ECF No. 34.

## II. Standard of Review

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) (2017); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical or other prison records if they are adequately identified and authenticated").

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## III. Discussion

### A. Darnell's Amended Claims

In his Amended Complaint, Darnell names the City as the sole Defendant. Am. Compl., at 1 (ECF No. 46). Construing his allegations liberally, Darnell alleges that the City failed to adequately train its police officers.[3] *Id.* Darnell also contends that "[t]he use of excesive [sic] police force that was a persistant [sic], widespread practice of city officials or employees, which although not authorized by officially adopted and promulgated policy, was so common and well settled as to constitute a custom that fairly represented municipal policy." *Id.* He avers that "its [sic] customary if you are poor and known as a drug user and like Plaintiff on parol [sic] excessive force by the police is expected, since the poor have no financial help for legal help, in Memphis, Texas." *Id.* at 2. Darnell claims that as a result of the March 20, 2017, incident, described in more detail below, he suffered dog bites, scarring, and mental anguish. *Id.*

### B. Underlying Constitutional Violation

A plaintiff must allege an underlying constitutional violation as a necessary prerequisite to pleading a successful municipal liability claim. *Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017) (quoting *Kitchen v. Dall. Cty.*, 759 F.3d 468, 483 (5th Cir. 2014)). Here, Darnell's municipal liability claim stems from a March 20, 2017, arrest by Memphis Police Department Chief Chris Jolly. *See* Am. Compl., at 1. Darnell asserts that Chief Jolly released his police dog Kilo and commanded Kilo to attack Darnell, after Darnell was handcuffed and lying on the ground, resulting in an unconstitutional excessive use of force. *See id.* The undersigned has found that Darnell's claim against Defendant Jolly survived preliminary screening and directed Jolly to file

[3] As discussed in detail below, Darnell's pleadings do not specifically describe how or the ways in which the City allegedly failed to adequately train Memphis Police Department officers. *See* Am. Compl., at 1–2.

an answer or other responsive pleading (*see* ECF No. 34); that claim is currently pending before this court.

**C. Darnell Has Not Alleged Sufficient Facts to Support a Claim for Municipal Liability Against the City of Memphis**

"A municipality is a 'person' subject to suit under Section 1983." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). A municipality cannot, however, "be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691. Instead, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001); *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) ("The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." (emphasis in original)). Thus, to state a successful municipal liability claim, a plaintiff must allege facts showing that the municipality violated plaintiff's constitutional rights through an official policy or "governmental custom, even if such custom has not received formal approval." *Zarnow*, 614 F.3d at 166 (internal quotations and citations omitted).

Here, Darnell's basis for the City's alleged liability is unclear. Darnell does not contend that the City maintains a formal written policy. Am. Compl., at 1. Darnell instead appears to plead two different theories of municipal liability: that the City (1) had an unwritten policy of using excessive force against "poor" citizens who are known drug users on parole; and (2) failed to adequately train its officers. *See id.* at 1–2. Darnell asserts that "[t]he use of excesive [sic] police force that was a persistant [sic], widespread practice of city officials or employees, which although

not authorized by officially adopted and promulgated policy, was so common and well settled as to constitute a custom that fairly represented municipal policy." *Id.* at 1. He alleges that "its [sic] customary if you are poor and known as a drug user and like Plaintiff on parol [sic] excessive force by the police is expected, since the poor have no financial help for legal help, in Memphis, Texas." *Id.* at 2. As to his second theory, Darnell alternatively claims that "[i]f a municipality completely fails to train its officers in a reckless or grossly negligent manner so that future police misconduct is almost inevitable, the municipality exhibits a 'deliberate indifference' to the resulting violations of a citizen's constitutional rights."[4] *Id.* at 1. Under either approach, Darnell has not pleaded sufficient facts to survive preliminary screening.

***1. Policy Liability***

To establish municipal liability under § 1983 based on an unconstitutional policy, a plaintiff must demonstrate the following elements: (1) a policymaker; (2) an official policy; and (3) a violation of plaintiff's constitutional rights "whose 'moving force'" is the policy or custom. *Piotrowski*, 237 F.3d at 578 (quoting *Monell*, 436 U.S. at 694). Darnell has failed to plead any facts establishing at least two of the three necessary elements.

Darnell alleges no facts showing the City maintained an official policy. To support the "policy" element, he must therefore demonstrate a "persistent, widespread practice" of officials and employees that "is so common and well-settled as to constitute a custom that fairly represents municipal policy . . . ." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984)). Darnell generally alleges that the use of excessive force by Memphis Police Department officers is so common "[t]hat the Mayor and City Counsel [sic] never

[4] The court liberally construes Darnell's pleadings, as it must at this stage of the proceedings, as alleging a failure-to-train claim against the City. *See* Am. Compl., at 1. The court notes, however, that Darnell recites a summary of the law regarding failure-to-train but does not explicitly allege that the City failed to train its officers. *See id.*

questioned the Plaintiff being mawled [sic] by a dangerous animal"; however, he has not alleged any specific facts showing a sufficient number of prior violations that would support a custom claim. Am. Compl., at 1. Indeed, Darnell lists only one isolated incident—his March 20 arrest—to support his claim that the use of excessive force is widespread. *See id.* at 1–2. "But plausibly to plead a practice 'so persistent and widespread as to practically have the force of law,' a plaintiff must do more than describe the incident that gave rise to his injury." *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (internal citation omitted) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). One isolated incident is simply insufficient to show a custom or practice for purposes of municipal liability. *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984)) ("Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy."); *see Peterson v. City of Fort Worth*, 588 F.3d 838, 850–51 (5th Cir. 2009) (affirming district court's conclusion that twenty-seven complaints against police department for alleged use of excessive force did not support conclusion that city maintained official policy of condoning excessive force); *Piotrowski*, 237 F.3d at 581–82 (explaining that plaintiff failed to show existence of a city policy for failure to investigate and discipline officers, where plaintiff did not establish a "pattern of complaints by other citizens").

Darnell's bare allegation that the alleged March 20 police dog attack resulted from the City's alleged general policy of using force against poor citizens who are known drug users on parole is conclusory and devoid of factual allegations supporting the claim. *See Peña*, 879 F.3d at 623; *Piotrowski*, 237 F.3d at 579 (quoting *Webster*, 735 F.2d at 841); *see, e.g.*, *Glud v. City of Aransas Pass*, Civil Action No. 2:14–CV–162, 2015 WL 419499, at *4 (S.D. Tex. Jan. 30, 2015) (granting summary judgment on plaintiff's claim against city because plaintiff failed to offer any evidence suggesting an official policy or custom of the city causing plaintiff's arrest or assault);

*Hatcher v. City of Grand Prairie*, No. 3:14-cv-432-M, 2014 WL 3893907, at *6 (N.D. Tex. Aug. 6, 2014) (citing *White v. Jackson*, Civil Action No. 7:13–cv–0050–O, 2014 WL 99976, at *6 (N.D. Tex. Jan. 10, 2014)) (explaining that "pleadings pertaining to individual actions taken in [a] specific case do not suffice to establish a pattern necessary for municipal liability based on custom or practice"). In short, "[i]t is not enough to say that because an officer did something wrong he must have acted pursuant to some undisclosed custom, practice, or policy that permits such wrongdoing." *Hatcher*, 2014 WL 3893907, at *6.

Moreover, Darnell has not pleaded facts showing that an official City policymaker had "[a]ctual or constructive knowledge" of a widespread practice. *See Webster*, 735 F.2d at 841. To the contrary, Darnell claims that the City policymakers learned of the alleged excessive force—i.e., the actions of Defendant Jolly—only after "the incident was in the public paper," "a medical report [was] filed," "a use of force [report was] filed, and also a medical bill [was submitted] to the City of Memphis." Am. Compl., at 2. Darnell attempts to bootstrap his claim by asserting that after learning of the March 20 incident, the City did not reprimand Defendant Jolly, which evidences the City's "custom" or "policy" regarding excessive force. *See id.* Such assertions, however, are similarly insufficient to attribute knowledge or promulgation of any alleged unconstitutional policy. *See, e.g.*, *Lopez-Rodriguez v. City of Levelland*, 100 F. App'x 272, 274 (5th Cir. 2004) ("We will not infer an unconstitutional custom or policy from a municipality's failure to discipline an officer for a single incident."); *Burge v. St. Tammany Par.*, 336 F.3d 363, 371 (5th Cir. 2003) (noting that evidence of an isolated occurrence will not support municipal liability predicated on a widespread practice theory); *Fraire*, 957 F.2d at 1278–79 (quoting *Berry v. McLemore*, 670 F.2d 30, 33 (5th Cir. 1982)) (explaining that "a city's custom or policy authorizing or encouraging police misconduct 'cannot be inferred from a municipality's isolated decision not to discipline a single officer for a single incident of illegality'").

Finally, Darnell has also failed to show that any alleged policy is "the moving force behind, and the direct cause of, the violation of [his] constitutional rights . . . ." *Williams v. Kaufman Cty.*, 352 F.3d 994, 1014 (5th Cir. 2003) (citing *Brown*, 520 U.S. at 404–05). A "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle v. City of Hous.*, 613 F.3d 536, 542 (5th Cir. 2010) (quoting *Bryan Cty.*, 520 U.S. at 404). Here, Darnell has not pleaded facts showing that any "widespread practice" of using excessive force was the "moving force" behind his alleged injury. Darnell points to his alleged injuries from March 20 to establish that the City's alleged "policy" caused him harm. *See* Am. Compl., at 1. But other than this conclusory allegation, Darnell's pleadings do not show that Defendant Jolly's alleged conduct resulted from a policy as opposed to constituting an individual, isolated incident. In other words, Darnell has not alleged facts that would allow the court to infer a "direct causal link" between any City policy and the alleged constitutional violation or his claimed injury. *Piotrowski*, 237 F.3d at 580. At best, he merely asserts a personal belief that the City's alleged policy caused him harm.

***2. Failure-to-Train Liability***

In limited circumstances, a plaintiff's allegation that a municipality failed to train its employees "may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *City of Canton v. Harris*, 489 U.S. 378, 387, 390 (1989); *see Hobart v. City of Stafford*, 784 F. Supp. 2d 732, 750 (S.D. Tex. 2011) (quoting *City of Canton*, 489 U.S. at 389) (explaining that a city's failure to train its employees may constitute a "policy" in narrow instances). As the Supreme Court explained in *City of Canton*:

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need

> for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

489 U.S. at 389. It is "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality," however, that "a city [may] be liable for such a failure [to train] under § 1983." *Id.*

Where the "policy" concerns an alleged failure to train employees, a plaintiff must demonstrate that "(1) the training or hiring procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy, and (3) the inadequate hiring or training policy directly caused the plaintiff's injury." *Conner v. Travis Cty.*, 209 F.3d 794, 796 (5th Cir. 2000) (quoting *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996)); *see Peña*, 879 F.3d at 623 (quoting *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001)). "Deliberate indifference is more than mere negligence." *Conner*, 209 F.3d at 796 (citing *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992)). Generally, a plaintiff must establish "[a] pattern of similar constitutional violations by untrained employees" to show deliberate indifference. *Peña*, 879 F.3d at 623–24 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)); *see Burge*, 336 F.3d at 370 (quoting *Thompson*, 245 F.3d at 459) (noting that "proof of deliberate indifference[] generally requires a showing 'of more than a single instance of the lack of training or supervision causing a violation of constitutional rights'"). A single incident may, however, supply the requisite deliberate indifference where the constitutional violation is a "highly predictable consequence" of the failure to train. *Kitchen*, 759 F.3d at 484, *abrogated on other grounds by Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015). Nevertheless, the Fifth Circuit "has been highly reluctant to permit this [single-incident] exception to swallow the rule that forbids mere respondeat superior liability." *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) (citing several cases for support).

Darnell's Amended Complaint is devoid of any facts establishing municipal liability based on the City's alleged failure to train Memphis Police Department officers. First, Darnell does not allege that the City's training policy was inadequate. *Conner*, 209 F.3d at 796. Darnell merely recites the law regarding failure to train. *See* Am. Compl., at 1 ("If a municipality completely fails to train its officers in a reckless or grossly negligent manner so that future police misconduct is almost inevitable, the municipality exhibits a 'deliberate indifference' to the resulting violations of a citizen's constitutional rights."). Second, Darnell has not pleaded facts showing that the City was deliberately indifferent in adopting or maintaining an inadequate training policy. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quoting *Bryan Cty.*, 520 U.S. at 409). Darnell does not allege facts establishing a pattern of Memphis Police Department officers using excessive force, much less that officers (or Defendant Jolly) engaged in a practice of using a police dog to attack detained individuals—the specific harm Darnell suffered.[5] *See* Am. Compl., at 1–2. Finally, as discussed above, Darnell's Amended Complaint pleads no facts showing that the City's alleged failure to train was the moving force behind his injury. *See id.* at 1 ("The moving force of this action would be the [accepted] custom of having the attack dog Kilo present and biting citizens when there is no need for him viciosley [sic] attacking citizens of Memphis Texas, Ie. Plaintiff.").

In sum, despite being provided the opportunity to amend his complaint and plead his best case, the conclusory allegations in Darnell's Amended Complaint remain insufficient to establish

[5] As noted above, a single incident can form the basis of a failure-to-train claim in very narrow instances. *See Brown v. Bryan Cty.*, 219 F.3d 450, 459 (5th Cir. 2000). Because Darnell does not allege the City's training policy was inadequate, or plead facts showing that his specific injury was a "highly predictable" consequence of the alleged failure, the court finds that the single incident exception does not apply based on the facts pleaded in this case. *Kitchen*, 759 F.3d at 484; *see Roberts*, 397 F.3d at 295 (quoting *Brown*, 219 F.3d at 461) ("To rely on this exception, a plaintiff must prove that the 'highly predictable' consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the 'moving force' behind the constitutional violation.").

municipal liability based on an alleged unconstitutional policy or the City's purported failure to train.

## IV. Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Judge dismiss Darnell's claims against the City of Memphis with prejudice in accordance with 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

## V. Right To Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: May 30, 2019

**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**