IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| GARY ALLEN DARNELL, <br> Institutional ID No. 01719408, <br> <br> Plaintiff, <br> <br> v. <br> <br> CHRIS JOLLY, *Police Chief of Memphis, TX*, et al., <br> <br> Defendants. | § § § § § § § § § § § § | CIVIL ACTION NO. 2:18-CV-142-Z-BQ |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Under Special Order No. 3-251, this case was automatically referred to the undersigned United States Magistrate Judge for further proceedings. Proceeding *in forma pauperis*, pro se Plaintiff Gary Allen Darnell alleges that Defendant, former Memphis Chief of Police Chris Jolly, used force excessive to the need during the course of Darnell's arrest, when Jolly purportedly released and commanded his police dog, Kilo, to attack Darnell after he was handcuffed and lying on the ground. Compl. 4, ECF No. 3.[1] Jolly seeks summary judgment on the basis of qualified immunity. ECF No. 56. Through his motion, Jolly contends he is entitled to qualified immunity because he did not use excessive force and, in any event, his actions were reasonable given that Darnell: disobeyed orders to submit to arrest; fled from the arresting officer; and hit Jolly in the face as he fled, causing Jolly to release Kilo in an attempt to apprehend the fleeing Darnell. Because the undersigned concludes that a genuine issue of material fact remains as to whether Jolly commanded Kilo to attack Darnell while still resisting and fleeing, or only after he was

---

[1] Page citations to Darnell's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

1

handcuffed and no longer a threat to the officers, the undersigned recommends that the District Court deny Jolly's summary judgment motion.

## I. Background

Darnell filed his original Complaint under 42 U.S.C. § 1983 alleging claims for excessive use of force and municipal liability in connection with a March 20, 2017, arrest. Compl. 3–12. The undersigned reviewed Darnell's Complaint, as well as authenticated records provided by the Memphis Police Department, and ordered Darnell to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976). ECF No. 23. Darnell submitted verified responses and, although not timely filed, the undersigned considered Darnell's answers in the screening process. ECF No. 30.

After reviewing the allegations in Darnell's Complaint, his responses to the questionnaire, authenticated records provided by the Memphis Police Department, and applicable law, the Court found that Darnell alleged sufficient facts to allow his excessive force claim against Defendant Chris Jolly to survive preliminary screening. Accordingly, the Court entered an order directing the United States Marshals Service (USMS) to personally serve process on Defendant Chris Jolly (ECF Nos. 34, 38, 44),[2] and Jolly timely answered.

In his Answer, Defendant Jolly raised the affirmative defense of qualified immunity. *See* Answer 2 ¶ 2.0, ECF No. 48. Because courts should decide the issue of qualified immunity on an expedited basis (*see, e.g.*, *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)), the undersigned entered

---

[2] On the same day, the undersigned also issued findings and conclusions recommending that the District Judge dismiss with prejudice Darnell's claims against Defendants City of Memphis and Kilo, a Memphis Police Department police dog. ECF No. 33. The District Judge adopted the undersigned's recommendation that Darnell's claims against Kilo be dismissed with prejudice. ECF No. 39. With respect to Darnell's claim against the City of Memphis, Texas, however, the District Judge concluded "plaintiff should be given an opportunity to file an amended complaint that is sufficient to withstand dismissal, if he can," and re-referred that claim to the undersigned for further proceedings. *Id.* Darnell filed an Amended Complaint with respect to his claim against the City on March 25, 2019 (ECF No. 46), and the undersigned entered findings and conclusions recommending dismissal of the amended claim as well. ECF No. 59. The Findings, Conclusions, and Recommendation remains pending. *See id.*

an accelerated scheduling order concerning motions for summary judgment and conducting limited discovery to facilitate its early resolution. *See* ECF No. 51.

Defendant Jolly filed his motion for summary judgment as to qualified immunity, along with a brief and appendix in support, on May 22, 2019. *See* ECF Nos. 56, 57, 58. Darnell filed a motion for leave to conduct limited discovery on the issue of qualified immunity, which the Court granted in part on June 6, 2019. ECF Nos. 60, 61. On July 19, 2019, Darnell filed a "Motion for Leave to File Motion in Objection to Defendants [sic] Answers and Objections in Discovery and Interrogatories in Response to Qualified Immunity." ECF No. 66. The Court entered an order on July 26, 2019, denying Darnell's motion to the extent he sought affirmative relief, but advising Darnell that to the extent the pleading substantively responded to Jolly's summary judgment motion the Court would consider his contentions in due course. ECF No. 67. In that same order, the Court reminded Darnell that any formal response to Jolly's summary judgment motion was due by July 29, 2019. *Id.*

On August 16, 2019, the Court *sua sponte* granted Darnell an extension of time in which to file a response after he failed to meet the July 29 deadline. ECF No. 69. Darnell timely filed a response (ECF Nos. 70, 71), to which Jolly filed a reply. ECF No. 74. Jolly's motion is now ripe for review.

## II. Summary Judgment Standard and Qualified Immunity

Where the pleadings and evidence show that no genuine issue of material fact exists, the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* The movant "bears the initial

3

responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the non-movant bears the burden of proving such material facts at trial, movants may satisfy their burden by either affirmatively showing the nonmovant's inability to establish such material facts or "merely demonstrat[ing] an absence of evidentiary support in the record for the non-movant's case." *Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011) (quoting *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010)).

A defendant's good-faith assertion of qualified immunity, however, alters the usual summary judgment burden of proof, "shifting it to the plaintiff to show that the defense is not available." *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016) (citations omitted); *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (holding that in summary judgment context, government official "need only plead qualified immunity, which then shifts the burden to the plaintiff"). A plaintiff rebuts the defense by "establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *King*, 821 F.3d at 654 (quoting *Gates*, 537 F.3d at 419); *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (confirming that a plaintiff seeking to overcome qualified immunity must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct" (internal quotation marks omitted)). To satisfy this burden, the plaintiff need not present "absolute proof," but must offer more than unsupported allegations. *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (citing *King*, 821 F.3d at 654). Specifically, the plaintiff must identify evidence in the record and show how it presents a genuine issue of material fact for trial.

*Celotex*, 411 U.S. at 324; *White v. City of Dall.*, Civil Action No. 3:12–CV–2145–O(BH), 2013 WL 821972, at *3–4 (N.D. Tex. Feb. 13, 2013) (stating that once defendants have "carried their summary judgment burden by asserting their qualified immunity defense . . . [t]he burden . . . shifts to plaintiff to produce evidence showing that the defendants violated his constitutional rights" and the conduct was objectively unreasonable). A court should view the evidence in a light most favorable to the plaintiff (*Anderson*, 477 U.S. at 255); however, "a [plaintiff] cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). A plaintiff "must allege facts specifically focusing on the conduct of [the defendant] which caused his injury." *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 995 (5th Cir. 1995).

Qualified immunity protects government officials performing discretionary functions from civil liability to the extent "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In deciding whether a defendant is entitled to qualified immunity, courts conduct a two-prong inquiry. Under the first prong, a court must decide whether the facts alleged, taken in the light most favorable to the plaintiff, show the officer's conduct violated a federal constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson*, 555 U.S. at 236; *see Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008) (stating that a court must determine "whether the plaintiff has alleged a violation of a constitutional right"). Under the second prong, a court must determine whether the constitutional right in question was clearly established at the time of the alleged misconduct. *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is

clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. A court may address either prong first in light of the circumstances particular to the case. *Pearson*, 555 U.S. at 236; *see Lytle v. Bexar Cty.*, 560 F.3d 404, 409 (5th Cir. 2009) (noting that "*Saucier*'s rigid 'order of battle'—requiring courts to always address the constitutional issue of whether alleged conduct violated the constitution—is now advisory under *Pearson*").

### III. Discussion

#### A. Both Parties Have Submitted Competent Summary Judgment Evidence

Jolly contends Darnell has not put forth any competent summary judgment evidence "to overcome *his* burden on qualified immunity." *See* Def.'s Reply 1, ECF No. 74 (emphasis in original); Def.'s Objections & Mot. to Strike 1–4, ECF No. 73. Specifically, Jolly argues that Darnell "ignores evidentiary standards" and "relies on speculative allegations, unauthenticated evidence, and conclusory statements to assert summary judgment is improper against Defendant Jolly." Def.'s Reply 1–2; *see* Def. Chris Jolly's Br. in Supp. of his Mot. for Summ. J. 16, ECF No. 57 [hereinafter Def.'s Br.] (arguing that Darnell has offered "nothing more than 'mere allegations,' insufficient to overcome the burden on qualified immunity, which would require evidence to rebut the testimony of Officer Jared Johnson and Chief Jolly"). Jolly's argument misconstrues Darnell's summary judgment proof and obscures the applicable summary judgment standard.

This case involves two competing versions of the facts, supported by sworn or verified accounts of the event. *See Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citing Fed. R. Civ. P. 56(c)(2)) (providing that a court may consider materials cited in support of a summary judgment motion if they can be presented in a form that would be admissible

6

at trial); *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit."). Neither Jolly nor Darnell have presented video evidence[3] or other materials that would clearly delineate the contested timeline of events.

Despite Jolly's contention that Darnell fails to supply any "admissible testimony," Darnell has supported his pleadings with precisely the same type of evidence on which Jolly relies: verified or sworn accounts of the events to which the individual claims to have personally experienced. *See, e.g.*, Fed. R. Civ. P. 56(c); *Hart*, 343 F.3d at 765. Indeed, Exhibit C to the response (Pl.'s Resp. 8–10) is a declaration, signed under penalty of perjury, containing Darnell's factual account of the March 20 incident.[4] Moreover, Darnell signed his Complaint and the "Affidavit" attached thereto, as well as his questionnaire responses, under penalty of perjury. *See* Compl. 5, 12; Questionnaire 3, ECF No. 30. The Court may consider all of the foregoing verified pleadings— Exhibit C, the Complaint and "Affidavit," and questionnaire responses—as competent summary judgment evidence. *See* Fed. R. Civ. P. 56(c); *Hart*, 343 F.3d at 765.

In sum, the Court concludes that each party has provided competent summary judgment evidence consisting of the following:

- Jolly: Appendix (ECF No. 58)

---

[3] According to Jolly, the "body cameras were not functioning, and because of this, they were not worn by the Memphis Police Department" on March 20, 2017. Def. Chris Jolly's Objs. & Answers 4, ECF No. 63; *see* Def.'s Br. 3 n.7 (stating that "[n]o officer body camera video exists of the chase"). Moreover, Jolly's dash camera "video was not marked as evidence because [he] was not the charging or arresting officer." Def. Chris Jolly's Objs. & Answers 4. The video from March 20 was therefore "automatically purged from the system . . . ." *Id.* Finally, Johnson's dash camera video "malfunctioned when initially activated." Def.'s App. 20, ECF No. 58. Thus, there is no video evidence depicting the disputed March 20 circumstances.

[4] By separate order entered of even date herewith, the Court denied Jolly's motion to strike with respect to Exhibit C because: (1) Darnell attested to its veracity under penalty of perjury; (2) it contains factual statements setting forth Darnell's personal account of his version of the relevant events; and (3) it contains statements that Darnell can present in admissible form at trial, which the Court may consider as competent summary judgment evidence.

- Darnell: verified Complaint (ECF No. 3); verified questionnaire responses (ECF No. 30); and Response (ECF Nos. 70, 71), except those sentences the Court struck in its order of even date herewith.

**B. Background**

On March 20, 2017, Defendant Jolly stopped a vehicle because the "license plates . . . did not match the vehicle." Decl. of Chris Jolly, Def.'s App. 1 ¶ 2; Pl.'s Resp. 8, ECF No. 71. The vehicle "pulled into the driveway [of a house] at 520 North 18th Street in Memphis, Texas"—Darnell's mother's home. Decl. of Chris Jolly, Def.'s App. 1 ¶ 2; Pl.'s Resp. 8. Darnell exited his mother's home to see who had pulled into the driveway. *See* Pl.'s Resp. 8. In the meantime, Memphis Police Officer Jared Johnson arrived on the scene. *Id.*; Decl. of Chris Jolly, Def.'s App. 1 ¶ 2; Decl. of Jared Johnson, Def's App. 13 ¶ 3. Officer Johnson observed Darnell exit the home and toss a "baggie"; consequently, Johnson informed Darnell that he was under arrest for drug possession. Decl. of Jared Johnson, Def's App. 13 ¶¶ 4–5; Pl.'s Resp. 8. According to Darnell, as Officer Johnson "closed in" to arrest him, Johnson "pulled his weapon" and, "fear[ing] for [his] life," Darnell fled. Pl.'s Resp. 8; *see* Decl. of Jared Johnson, Def's App. 13 ¶ 5 (attesting that as Johnson "attempted to place handcuffs on" Darnell, "he started to run" but not stating that Johnson drew his weapon). Jolly avers—and Darnell does not dispute—that as Darnell fled, he struck Jolly on the left cheek "with his right hand, which had something in it, possibly a cell phone." Decl. of Chris Jolly, Def.'s App. 2 ¶ 5.

Darnell asserts that he ran approximately eight feet before Officer Johnson tased him. Pl.'s Resp. 9; Compl. 11. After being tased, Darnell states that he "ran for about 5 more feet and fell to the ground." Pl.'s Resp. 9; Compl. 11; *see* Decl. of Jared Johnson, Def's App. 14 ¶ 6 (declaring

that "[o]nce I deployed my taser Darnel [sic] fell to the ground"). Despite general agreement as to what transpired to this point, the parties dispute the timing of what happened next.

Darnell contends that Johnson and another unknown officer handcuffed him, and all three officers—Jolly, Johnson, and the John Doe officer—"discuss[ed] what happened . . . as [Darnell] lay[] on the ground in handcuffs." Pl.'s Resp. 9; *see* Compl. 11. According to Darnell, he "watched . . . Jolly walk to his truck and retrieve his police bite dog," Kilo. Pl.'s Resp. 9; *see* Compl. 11. Darnell claims that as he lay handcuffed on the ground, "the Dog starts smelling me then I watch Police Chief Jolly do a hand movement and then the Police Dog turns vicious and starts to mawl [sic] me." Pl.'s Resp. 9; *see* Compl. 11. Darnell states that he began "yelling but I'm helpless as i'm [sic] still in handcuffs and I was just tased, so the only thing I can do is plead for the officers to get the dog off of me, Officer Jolly finnally [sic] pulls the dog away from me." Pl.'s Resp. 9; *see* Compl. 11. Darnell alleges he suffered bites on his arm and leg that required stitches. Compl. 12; Questionnaire 3.[5]

Jolly provides a much different version of the facts regarding Kilo's release and attack of Darnell. Jolly asserts that after Darnell struck him, Darnell continued running; consequently, Jolly activated the "'bail out' button on [his] vest which remotely opens the door to [his] unit where [his] K-9, Kilo, was." Decl. of Chris Jolly, Def.'s App. 2 ¶ 6. Jolly ordered Kilo to attack, and the dog began chasing after Darnell. *Id.* At the same time, Officer Johnson also pursued Darnell on foot. *Id.*; Decl. of Jared Johnson, Def.'s App. 14 ¶ 6. Johnson tased Darnell and states that he "caught up to [Darnell] within seconds." *Id.* Johnson avers that he attempted to handcuff Darnell, "but [Darnell] continued resisting arrest"; Johnson "then heard the K-9's nails on the pavement,

---

[5] In his questionnaire responses, Darnell also indicates that he sustained a broken collar bone during the incident. Questionnaire 3. He does not make clear, however, whether he attributes that injury to Chief Jolly's actions.

9

his collar, and the sound of the dog breathing" and jumped away from Darnell to avoid being bitten by Kilo. *Id.* Johnson asserts that "[i]mmediately after [he] jumped up Kilo attacked Darnell by biting him." *Id.* Jolly claims that "[b]ecause of the height of the fence on the north side of the driveway, approximately 6 feet, [he] could not see Darnell until [he] got to the street as [he] was leaving the driveway." Decl. of Chris Jolly, Def.'s App. 2 ¶ 8. Jolly attests that by the time he caught up to Darnell and Johnson, "Darnell was already on the ground with Kilo and Officer Johnson there too." *Id.* at 2 ¶ 7. According to Jolly, he "immediately" commanded Kilo to release his hold, and Kilo let go. *Id.* at 2 ¶¶ 7–8.

Defendant Jolly moves for summary judgment, alleging that qualified immunity precludes Darnell's claim. Def. Chris Jolly's Mot. for Summ. J. 1, ECF No. 56; Def.'s Br. 3. In his brief, Jolly argues that the use of force was justified because Darnell: (1) attempted to flee as Officer Jared Johnson (who was involved in the March 20 incident but Darnell has not named as a defendant) placed Darnell under arrest; (2) struck Jolly in the face as he fled; and (3) continued to resist arrest after Johnson tased Darnell. Def.'s Br. 2.

### C. Jolly Has Met His Burden of Raising the Qualified Immunity Defense in Good Faith

As outlined above, government officials seeking summary judgment on the affirmative defense of qualified immunity need only raise the defense in good faith; they need not present evidence to support the good-faith assertion. *Gates*, 537 F.3d at 419; *Brooks*, 18 F. Supp. at 794. Jolly raised the defense both in his Answer and in his motion for summary judgment, and he has proffered summary judgment evidence in support. *See* Answer 2 ¶ 2.0; Def.'s Br. 1–2, 8, 13. In addition, Jolly explains in the instant motion why he is entitled to qualified immunity: he did not violate Darnell's constitutional rights and his conduct was objectively reasonable given the circumstances. Def.'s Br. 8–15.

In this case, by asserting the defense of qualified immunity, Jolly has carried his initial summary judgment burden. *See Gates*, 537 F.3d at 419. The burden now shifts to Darnell to produce or identify evidence showing Jolly violated his constitutional rights and that the violation was objectively unreasonable under clearly established law at the time of the violation. *See Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007).

### D. Jolly is Not Entitled to Qualified Immunity

#### *1. Darnell has produced competent evidence showing that Jolly violated his constitutional rights.*

Darnell alleges that Jolly violated his right to be free from excessive force when Jolly commanded Kilo to attack Darnell after he was handcuffed and compliant. *See* Pl.'s Resp. 8–9. Jolly contends that he is entitled to summary judgment because no constitutional violation occurred, i.e., Darnell continued to resist arrest, resulting in Kilo biting him. Def.'s Br. 1, 8–13. In considering Jolly's motion, the Court must view all facts and inferences in the light most favorable to Darnell and resolve any disputed material facts in his favor. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Importantly, this Court must not make credibility determinations or weigh evidence in ruling on the motion. *Anderson*, 477 U.S. at 254–55.

Darnell's use of force claim arises under the Fourth Amendment because he was an arrestee at the time of the alleged incident. To sufficiently state an excessive force claim, an arrestee must demonstrate that he suffered: "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)). Courts consider the following non-exclusive criteria, known as the *Graham* factors, in evaluating whether an officer's use of force is excessive or

11

objectively unreasonable: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." *Darden v. City of Fort Worth*, 880 F.3d 722, 728–29 (5th Cir. 2018) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (internal quotation marks omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

Darnell alleges, and Jolly's summary judgment evidence confirms, that he suffered injuries as a direct result of the March 20, 2017, incident—i.e., dog bites severe enough to require stitches. *See* Compl. 12; Questionnaire 3; Pl.'s Resp. 9–10; Decl. of Jared Johnson, Def's App. 14 ¶ 7. Thus, this Court need only determine whether the facts alleged, *viewed in the light most favorable to Darnell*, show that his injury "resulted . . . from [a] use of force that was excessive to the need and that . . . the force used was objectively unreasonable." *Flores*, 381 F.3d at 396 (citing *Goodson*, 202 F.3d at 740). The Court must therefore apply the *Graham* factors to determine whether deployment of a police K-9 on a suspect cuffed and lying prone on the ground constitutes excessive force that was clearly unreasonable.

### a. Severity of the Crime

In connection with the March 20, 2017, incident, Officer Johnson suspected Darnell of possessing a controlled substance—a state felony—of which Darnell was ultimately convicted. Decl. of Jared Johnson, Def.'s App. 13 ¶ 4–5; Def.'s App. 56, 60–61. Darnell resisted arrest by

ignoring Johnson's commands and fleeing. Pl.'s Resp. 8–9; Decl. of Jared Johnson, Def.'s App. 13–14 ¶ 4–6; *see* Decl. of Chris Jolly, Def.'s App. 2 ¶¶ 4–5 (stating that Johnson "attempted to place Darnell under arrest, but he resisted . . . and started running"). The severity of the suspected crimes at issue weigh in favor of Jolly. *See, e.g., Darden*, 880 F.3d at 729 (citing *Orr v. Copeland*, 844 F.3d 484, 493 (5th Cir. 2016)) (noting that "drug crimes," particularly "dealing drugs," can be "serious offenses" but nevertheless finding that officers were not entitled to qualified immunity on excessive force claim because other *Graham* factors weighed in plaintiff's favor).

### b. *Immediate Threat to Officer Safety*

Here, there is no dispute that Darnell fled when Officer Johnson attempted to place him under arrest. *See* Pl.'s Resp. 8–9; Decl. of Chris Jolly, Def.'s App. 2 ¶¶ 5–6. There is also no dispute that Officer Johnson tased Darnell as he fled, causing him to fall to the ground. Pl.'s Resp. 9; Decl. of Jared Johnson, Def.'s App. 14 ¶ 6 (stating that he tased Darnell "for a few seconds"); Def.'s App. 16. Darnell contends, however, that as a result of being tased it "took all [his] energy away and [he] could barely speak" (Pl.'s Resp. 9) and that, at the time Jolly deployed Kilo, he was handcuffed and lying on the ground. Pl.'s Resp. 9; *see* Compl. 11.

Considering all facts and evidence in the light most favorable to Darnell, and drawing all reasonable inferences in his favor as well, the Court concludes that this factor supports a finding that the force applied was excessive or objectively unreasonable. According to Darnell's summary judgment proof, Johnson had just tased Darnell and he was lying handcuffed on the ground. The Court concludes, based on the summary judgment record as developed, that a reasonable officer would have determined Darnell no longer posed an immediate threat to Jolly and Johnson such that the use of a police dog was warranted, particularly where Darnell's hands were cuffed and restrained. *See, e.g., Cooper v. Brown*, 844 F.3d 517, 522–23 (5th Cir. 2016) (concluding "[n]o

reasonable officer could conclude that [plaintiff] posed an immediate threat to [officer] or others," where plaintiff "was not suspected of committing a violent offense" and officer "could see [plaintiff's] hands and knew he had no weapon");[6] *Kitchen v. Dall. Cty.*, 759 F.3d 468, 478–79 & n.30 (5th Cir. 2014), *abrogated on other grounds by Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (noting that, under the Eighth Amendment, "'the need for application of force' would be greatly reduced after the [prisoner] had already been restrained and subdued, such that the 'amount of force' . . . may have been disproportionate to the need" and that, "even if the detention officers did possess an actual perception that the [prisoner] posed a threat after he had already been restrained and subdued, a jury might nonetheless conclude that such a perception was unreasonable"); *Molina v. Collin Cty.*, Civil Action No. 4:17-CV-00017, 2017 WL 5441833, at *3–5 (E.D. Tex. Nov. 14, 2017) (finding that plaintiff, suspected of a non-violent crime, did not pose an immediate threat to officers where although plaintiff fled, he was not running away from an officer who had attempted to detain him, and the mere possibility that he was armed was insufficient to consider plaintiff an immediate threat).

### c. *Actively Resisting Arrest or Attempting to Evade Arrest by Flight*

The Court finds that the third *Graham* factor also weighs in Darnell's favor. Darnell avers that after he was handcuffed, lying on the ground, and no longer resisting, Jolly directed Kilo to attack him. Compl. 4, 11; Questionnaire 2; Pl.'s Resp. 9; *see also* Pl.'s Resp. 3 (contending that after being tased, he could not "move any muscles and his energy [was] zapped from his body"). Specifically, Darnell contends that Jolly was aware Darnell was handcuffed and no longer resisting

---

[6] Although not expressly stated, Jolly implies that because he and Johnson had not conducted a pat-down of Darnell, they were unaware whether he had a weapon, making him more of a threat. As the Fifth Circuit noted in *Cooper*, however, "it is not enough, standing alone, to permit a reasonable officer to characterize a[n unsearched] suspect as an immediate threat," particularly where the plaintiff is not suspected of committing a violent offense. 844 F.3d at 523 n.2.

or evading but elected to deploy Kilo anyway.[7] Compl. 4, 11; Questionnaire 2; Pl.'s Resp. 9 (stating that "[a]s I was still laying [sic] on the ground in handcuffs watching Jolly and his dog Kilo approach me, the dog starts smelling me then I watch Police Chief Jolly do a hand movement and then the police dog turns vicious and starts to mawl [sic] me").

A reasonable trier of fact could, based on these sworn allegations, conclude that Jolly's decision to order Kilo to attack Darnell after being restrained was excessive to the need and objectively unreasonable under the circumstances. *See, e.g., Kitchen*, 759 F.3d at 477–78 (holding a genuine issue of material fact remained as to whether defendants' use of force was proportionate to the need considering detainee's allegation that defendants applied force "after he was already restrained, subdued, and no longer a threat"); *Molina*, 2017 WL 5441833, at *3–5 (viewing the facts in a light most favorable to plaintiff, court found that plaintiff had established defendant's actions were objectively unreasonable where plaintiff asserted that he was attempting to surrender at time defendant commanded dog to attack plaintiff); *Holliday v. Ramert*, Case No. 12–cv–1060–MJR–SCW, 2014 WL 7403287, at *4 (S.D. Ill. Dec. 28, 2014) (denying defendant's motion for summary judgment on qualified immunity where fact issue remained as to whether defendant's deployment of police dog occurred before or after plaintiff had surrendered and was no longer resisting arrest).

---

[7] Jolly argues that Darnell's response "ignores . . . [Officer Johnson's description] delineat[ing] the timeline of the dog bites . . . ." *See* Def.'s Reply 4. This statement, however, is inaccurate. Darnell directly and clearly disputes the timing of the bite. *See* Pl.'s Resp. 9 (alleging Kilo bit him *after* he was handcuffed and lying on the ground). In effect, Jolly argues that this Court should simply accept his version of the facts over those stated by Darnell. *See* Def.'s Reply 4 (stating that Johnson's declaration "places the event of handcuffing Darnell after the dog bite"). But making credibility determinations in the face of dueling verified statements is a role for the jury—not this Court on summary judgment. *See, e.g., Kitchen*, 759 F.3d at 477 (citing *Willis v. Cleco Corp.*, 749 F.3d 314, 325 (5th Cir. 2014) and *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 972 (5th Cir. 2014)) (noting that although detention officers denied engaging in conduct that plaintiff and witnesses alleged, "the respective credibility of the inmates and detention officers may not be evaluated on summary judgment").

Stated differently, if, as Darnell avers, Jolly commanded Kilo to attack Darnell after he was handcuffed and no longer resisting, then Jolly's decision would not have been reasonable given the circumstances. *See, e.g., Darden*, 880 F.3d at 731 (compiling cases) (noting that the Fifth Circuit has "previously suggested that a constitutional violation occurs when an officer tases, strikes, or violently slams an arrestee who is not actively resisting arrest," and therefore finding that plaintiff alleged a constitutional violation sufficient to defeat qualified immunity where he asserted that he was not actively resisting arrest when defendants threw him to the ground, tased him twice, and beat him); *Cooper*, 844 F.3d at 523–24 (explaining that "[u]nder the facts in this record, permitting a dog to continue biting a compliant and non-threatening arrestee is objectively unreasonable"); *Lytle*, 560 F.3d at 413 (citing *Abraham v. Raso*, 183 F.3d 279, 294 (5th Cir. 1999)) ("But an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased.").

If, however, as Jolly and Johnson have attested, Darnell evaded arrest, struck Jolly on the face, and resisted arrest even after being tased, then Jolly's decision to release Kilo in an attempt to apprehend Darnell as he fled and *before* being handcuffed would have been reasonable under the totality of circumstances. *See, e.g., Tilson v. City of Elkhart*, 96 F. App'x 413, 416–18 (7th Cir. 2004) (holding, based on the *Graham* factors, that officer's use of a K-9 to "apprehend and then momentarily detain" person suspected of driving under the influence did not constitute excessive force, where suspect attempted to flee, posed a danger to himself and others, and the officer was not certain whether suspect possessed a weapon); *Jarrett v. Town of Yarmouth*, 331 F.3d 140, 150–51 (1st Cir. 2003) (holding, "after conducting the *Graham* balancing test," that officer's "release of a dog trained to bite and hold did not violate [plaintiff's] Fourth Amendment rights as a matter of law," where plaintiff attempted to evade arrest by fleeing, was behaving

erratically, and the officer "could not discern whether [plaintiff] was armed given the limited visibility, or predict the lengths to which [plaintiff] would go to avoid arrest"); *Shumpert v. City of Tupelo*, Civil Action No. 1:16-CV-120-SA-DAS, 2017 WL 6803763, at *6 (N.D. Miss. Nov. 6, 2017) (concluding plaintiffs failed to show officer's decision to release K-9 to apprehend suspect was objectively unreasonable, where suspect actively fled and evaded arrest, refused to comply with officer's commands, and fought the K-9 after he bit the suspect). At this stage of the proceedings, however, these differing accounts regarding the timing of the use of force cannot be resolved without weighing the evidence and assessing witness credibility.

Having carefully considered and weighed each of the *Graham* factors, the Court concludes that a genuine issue of material fact remains with respect to whether Jolly used clearly excessive and unreasonable force. Thus, the District Court should find that Darnell has adequately pleaded facts demonstrating Jolly violated his Fourth Amendment right.

### 2. Jolly's alleged actions violated clearly established law.

The Court also finds that the right at issue in this action—to be free from excessive force during an arrest—was clearly established at the time of Jolly's alleged misconduct.[8] As the Fifth Circuit has explained, the case law is "clear that when an arrestee is not actively resisting arrest the degree of force an officer can employ is reduced." *Darden*, 880 F.3d at 731 (citing multiple cases for support). For example, in *Bush v. Strain*, the Fifth Circuit held that "it was objectively unreasonable for an officer to slam an arrestee's face into a vehicle when the arrestee 'was not resisting arrest or attempting to flee.'" *Id.* (quoting *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)). Similarly, the Fifth Circuit held in *Newman v. Guedry* "that it was objectively

---

[8] Neither Darnell or Jolly directly addresses whether Jolly's actions complied with clearly established law. *See* Def.'s Br. 1–2 (maintaining that he is entitled to summary judgment because Darnell has not demonstrated Jolly violated his constitutional rights and Jolly's actions were reasonable given the circumstances); Pl.'s Resp. 1–12.

17

unreasonable for officers to tase and strike an arrestee with a nightstick without resorting to less violent means when the arrestee's 'behavior did not rise to the level of active resistance.'" *Id.* (quoting *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012)) (internal quotations omitted). The fact that the foregoing cases do not involve a dog bite does not insulate Jolly. *Cooper*, 844 F.3d at 525.[9]

Here, Darnell asserts Jolly was aware that he was handcuffed and no longer resisting arrest at the time Jolly decided to command Kilo to attack Darnell. Pl.'s Resp. 9. Accepting this allegation as true, as the Court must in reviewing the summary judgment evidence,[10] the Court concludes that Jolly had fair warning, based on established Fifth Circuit case law at the time of the incident, that subjecting the handcuffed, non-resisting Darnell to a dog attack was objectively unreasonable. *See Cooper*, 844 F.3d at 525.

In sum, Darnell has met his burden of providing competent summary judgment evidence sufficient to create a genuine issue of material fact regarding Jolly's March 20, 2017, use of force. Viewing all facts in a light most favorable to him, as the Court must at this stage, Darnell has met his burden to show that Jolly acted unreasonably and unconstitutionally in light of clearly established law, and Jolly is not entitled to summary judgment on the issue of qualified immunity.

## IV. <u>Recommendation</u>

For the foregoing reasons, the undersigned recommends that the United States District Judge **DENY** Defendant Chris Jolly's Motion for Summary Judgment on the issue of qualified immunity. ECF No. 56.

---

[9] The *Cooper* case provides further justification for concluding this right was clearly established. Issued approximately three months before the incident alleged herein, the Fifth Circuit held that subjecting a compliant and non-threatening arrestee to a lengthy and no longer necessary dog attack was objectively unreasonable. *Cooper*, 844 F.3d at 524–25.

[10] The Court acknowledges that these facts are contested, but "where factual disputes exist, [the Court] accept[s] the plaintiff's version." *Cooper*, 844 F.3d at 522.

## V.     Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: September 27, 2019

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE